# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2548 | **DATE** | 08/27/2003 |
| **CASE TITLE** | United States ex rel. Willie Davis v. Winters | | |

**MOTION:**   [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

| Petition for a Writ of *Habeas Corpus* (doc. # 1) |
|---|

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] . Petitioner's request for a writ of *habeas corpus* is DENIED. All other pending motions are terminated as moot.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | Document Number |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | **SEP 02 2003** | |
| ✓ | Docketing to mail notices. | date docketed | 21 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | | U.S. DISTRICT COURT | date mailed notice |
| JHC | courtroom deputy's initials | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

**DOCKETED**

SEP 0 2 2003

UNITED STATES OF AMERICA *EX REL.*, )
WILLIE DAVIS, )
)
      Petitioner )    No. 00 C 2548
)
v. )    The Honorable William J. Hibbler
)
KEVIN L. WINTERS,[1] )
)
      Respondent. )

### Memorandum Opinion and Order

Following a bench trial, Willie Davis was convicted in the Circuit Court of Cook County,

Illinois, of first degree murder and armed robbery and sentenced to serve concurrent terms of 50 and

30 years, respectively. After Davis's challenges to his conviction and sentences were denied on

direct appeal and in state post-conviction proceedings, he filed this *pro se* petition for a writ of

*habeas corpus* pursuant to 28 U.S.C. § 2254, asserting four possible grounds for relief. Many of

Davis's claims are procedurally defaulted and those that are not do not warrant *habeas corpus* relief.

Accordingly, Davis's petition is denied.

### Factual Background

Charles Scott was robbed and beaten to death in his Chicago apartment building on

December 17, 1993. Davis became a suspect after Chicago Police detectives observed footage from

---

[1] Kevin L. Winters is currently the Warden at the Western Illinois Correctional Center,
where Davis is incarcerated, and is thus the proper respondent in this *habeas* action. *See* Rule
2(a) of the Rules Governing *Habeas Corpus* Cases under 28 U.S.C. § 2254. This court hereby
substitutes Winters as the respondent. *See* Fed. R. Civ. P. 25(d)(1).



a bank's video surveillance that revealed a person attempting to use the deceased's ATM card from a vehicle similar to Davis's. On December 21, 1993, Chicago Police Detectives Abreu and Webb went to Davis's apartment, located in the same building as the victim's, and took him and his girlfriend Vickie Penny, to the police station for questioning related to Scott's murder. According to Detective Webb, shortly into the questioning, he noticed a red spot on the back of Davis's jacket, and Davis then confessed that he had killed the victim. Davis told the detectives that he approached the victim around 2 p.m. on December 17 in the basement of the apartment building and asked the victim to lend him $20. Davis then told the detectives that he picked up "something like a crowbar" and hit the victim with it until he stopped moving, took the victims wallet, and disposed of the murder weapon and a cloth used to wipe his hands in a dumpster in Pottawattomie Park on the north side of Chicago, Illinois. After two unsuccessful attempts to use the victim's ATM card, he threw the victim's wallet from his car window. The officers then showed Davis a photograph of a person attempting to use the victim's ATM card at a drive-up ATM, and asked him if that person was his girlfriend, Penny

The police recovered the murder weapon, which turned out to be a tire iron and not a crowbar, from the dumpster indicated by Davis. Davis then revised his confession and stated that after the victim refused to lend him $20, he went to his car and retrieved the tire iron, threatened the victim, and began beating him after the victim continued to refuse to lend him $20. A short time later, Davis repeated his confession to Assistant State's Attorney Kelly Chevalier.

Before trial, Davis attempted to suppress his confessions. He alleged that the police told him that they knew he killed the victim and that if he did not confess to the murder, they would incarcerate his girlfriend and take away their children. Detective Webb testified in rebuttal that

2

neither he nor Detective Abreu ever told Davis that if he did not confess they would charge his girlfriend or that the couple would lose custody of their children. The trial court heard both Davis's and the Detective's testimony and denied the motion to suppress.

At trial, Detective Webb testified that the police began investigating Davis when the bank videotape showed Davis's car at the drive-up ATM. Davis objected to the detective's testimony on hearsay grounds, but the trial judge overruled Davis's objection because Detective Webb's testimony was not being offered to prove the truth of the matter asserted. After all of the evidence had been presented, the court found Davis guilty of robbery and first degree murder.

On appeal, Davis argued that the state trial court erred in denying his motion to suppress his oral confessions and in admitting the testimony of Detective Webb that police began to investigate Davis because of the footage from the bank video surveillance. Finally, Davis argued that the state had not proved his guilt beyond a reasonable doubt because no independent evidence corroborated his confession. The state appellate court affirmed Davis's conviction and the Illinois Supreme Court denied leave to appeal.

Before filing his state court petition for post-conviction relief, Davis attempted to obtain the common law record, transcript, and street file, but the state trial court denied his request without elaboration. Davis's petition for post-conviction relief raised two issues: (1) that he was denied meaningful access to the courts because he was not provided with the common law record and transcripts; and (2) his appellate counsel was ineffective in failing to raise multiple instances of trial counsel's ineffectiveness. The trial court summarily denied Davis's petition for post-conviction relief. Davis appealed, and the appellate court dismissed his appeal. First, the state appellate court held that Davis's claims that he was denied access to the court were not cognizable under Illinois'

3

Post-Conviction Hearing Act because he made his request after his conviction became final and the Act requires that a petitioner allege a substantial deprivation of constitutional rights that resulted in his conviction. Second, the appellate court found that Davis's claims of ineffectiveness were insufficient to require further proceedings. In his petition for leave to appeal to the Illinois Supreme Court, Davis raised two issues: (1) that the lower state courts abused their discretion when they failed to hold a hearing regarding the claims contained in his post-conviction petition; and (2) that appellate counsel was ineffective when he failed to argue that trial counsel was ineffective in failing to argue that his confession was uncorroborated. The Illinois Supreme Court denied the petition for leave to appeal.

On April 26, 2000, Davis filed a petition for a writ of *habeas corpus*, raising four potential grounds for relief: (1) his oral statements to the detectives and prosecutor should have been suppressed as involuntary; (2) the state court erred in admitting hearsay statements of Detective Webb; (3) he was denied meaningful access to the courts because the state court denied his request for a copy of the common law record during post-conviction proceedings; (4) and he was denied ineffective assistance of both trial and appellate counsel.

## II. Analysis

Federal courts have the power to grant a writ of *habeas corpus* if a state prisoner is restrained in violation of the Constitution or laws and treaties of the United States. *See* 28 U.S.C. § 2254(a). *Habeas corpus* relief shall not be granted, however, with respect to any claim that was adjudicated on the merits in state court proceedings unless the resultant effect is (1) a decision that is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) a decision based on an unreasonable determination of the facts

4

in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law . . . or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." *Williams v. Taylor*, 529 U.S. 402, 405 102 S. Ct. 1495, 1519, 146 L. Ed. 2d 389 (2000). In addition, a state court decision involves an "unreasonable application" if the state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case . . . or extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should." *Id.* at 406.

## A. *Procedural Default*

A federal court, however, may not address the merits of a claim contained in a *habeas corpus* petition unless the claim was fully and fairly presented to the state court for adjudication. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 119 S. Ct. 1728, 1731, 144 L. Ed. 2d 1 (1999). In other words, the petitioner must have exhausted all available state remedies, and raised all of his claims during the course of the state court proceedings, before seeking relief in federal court. *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995). The failure to pursue a discretionary appeal to the highest court of a state constitutes a procedural default that bars federal *habeas corpus* relief. *Boerckel*, 526 U.S. at 845. The Seventh Circuit has instructed that there is no "appreciable difference between direct appeals and post-conviction appeals in this regard . . . [and] the procedural default rule announced in *Boerckel* applies with equal force in a case . . . on collateral review." *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999). A petitioner's procedural default can be excused if the petitioner

demonstrates adequate cause to excuse his default and actual prejudice resulting from the default. *Mahaffey v. Schomig*, 294 F.3d 907, 915 (7th Cir. 2002).

Respondent concedes that Davis raised the claims that his oral confessions to the detectives and prosecutors were involuntary and that the trial court erred in admitting hearsay on direct appeal and so has not procedurally defaulted them. Respondent also concedes that Davis preserved the claim that appellate counsel was ineffective in neglecting to argue that trial counsel failed to argue that his confession was uncorroborated. Respondent argues, however, that Davis's remaining claims have been procedurally defaulted because he failed to pursue a discretionary appeal to the highest state court. The Court agrees. Even though Davis raised several ineffective assistance of counsel arguments and a claim regarding the availability of the common law record and trial transcript during state post-conviction proceedings, he never presented these arguments to the Illinois Supreme Court. During post-conviction proceedings, the only claims that Davis raised in his petition for leave to appeal to the Illinois Supreme Court were: (1) that the lower state courts abused their discretion in failing to hold a hearing regarding his post-conviction claims, which he does not raise in the pending *habeas corpus* petition; and (2) that appellate counsel was ineffective in failing to challenge Davis's conviction on the ground that his confession was uncorroborated. Davis makes no argument that his procedural default should be excused. Accordingly, Davis has procedurally defaulted claims that he was denied meaningful access to the courts and that he was denied effective assistance of counsel (except with regard to the one claim noted above).

B.    *Voluntariness of Davis's Confession*

Davis first argues that the introduction of his confession, which he claims was coerced, violated due process. The Self-Incrimination Clause of the Fifth Amendment guarantees that no

person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., Amend. 5. The Supreme Court employs a "totality of circumstances" test to determine whether a confession has been "'made freely, voluntarily and without compulsion or inducement of any sort.'" *Withrow v. Williams*, 507 U.S. 680, 689, 113 S. Ct. 1745, 1751, 123 L. Ed. 2d 407 (1993) (quoting *Haynes v. Washington*, 373 U.S. 503, 513, 83 S. Ct. 1336, 13453, 10 L. Ed. 2d 513 (1963)) (internal quotation marks omitted); *see also Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). Whether a statement was made involuntarily under the totality of the circumstances is an issue of law. However, a state court's determination of the facts regarding voluntariness is an issue of fact, presumed to be correct and may only be rebutted by clear and convincing evidence. *See Everett v. Barnett*, 162 F.3d 498, 500 (7th Cir. 1998); 28 U.S.C. § 2254(e)(1).

The issue raised by Davis in his petition is essentially a factual one. Davis contends that, contrary to the findings of the state trial court, his confession was involuntary because the detectives threatened to charge his girlfriend with Scott's murder and take away the couple's children. But Davis presented this exact argument to the state courts both during the motion to suppress his confession and during his direct appeal. The state trial court heard Davis's testimony as well as the testimony of the detectives that they made no such threats and the testimony of the assistant state's attorney that she heard no such threats. The state trial court assessed the witnesses credibility and chose to believe the detectives and not Davis. In his *habeas* petition, Davis merely rehashes the argument he presented to the state court regarding the police detective's allegedly coercive behavior. Davis presents no evidence, other than his repeated allegation that he was threatened, to demonstrate that the state court's factual findings are incorrect and thus cannot overcome the presumption that the state trial court's historical findings of the voluntariness of his statement are correct. Given those

findings, the Court has no basis in law to conclude that Davis's confession was involuntary and his claim for relief must be denied.

C. *Detective Webb's Testimony*

Davis next argues that the state trial court erred in admitting the testimony of Detective Webb regarding the video surveillance tapes obtained from a bank where the victim's ATM card was used. Evidentiary errors do not normally entitle a petitioner to *habeas corpus* relief. *Anderson v. Sternes*, 243 F.3d 1049, 1053 (7th Cir. 2001); *Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001). Relief is appropriate only if the petitioner can establish that the erroneous evidentiary ruling was so prejudicial that it compromised the petitioner's due process right to a fundamentally fair trial, creating a significant likelihood that an innocent person has been convicted. *Howard v. O'Sullivan*, 185 F. 3d 721, 723-24 (7th Cir. 1999). Detective Webb testified that Davis first became a potential suspect after he observed Davis's vehicle parked near the building in which the victim lived and that Davis's vehicle shared characteristics from the car which Webb had seen on the bank's video surveillance. The state court admitted Webb's testimony over Davis's hearsay objection, ruling that Webb's testimony was not being offered to prove the truth of the matter—that Davis attempted to use the ATM cards — but to demonstrate why Davis became a suspect. Again, Davis merely reproduces the hearsay arguments that he made to the state court, making no attempt to show that the ruling was so prejudicial that it denied him due process and created a likelihood that innocent person had been convicted. *Habeas corpus* relief may only be granted when a petitioner's federal constitutional rights have been violated and may not be granted solely because a state court erred in applying its rules of evidence. *See McGowan v. Miller*, 109 F.3d 1168, 1176 (7th Cir. 1997) (declining to review *habeas* claim where petitioner failed to explain the constitutional nature of

8

allegedly erroneous state evidentiary rulings). Because Davis has failed to allege any constitutional error, his claim that the testimony of Detective Webb regarding the bank video surveillance was improperly admitted hearsay is not cognizable on *habeas corpus* review.

## D. Ineffective Assistance of Counsel

Davis's final claim is that appellate counsel was ineffective in failing to challenge his conviction on the grounds that trial counsel never argued that his confession was uncorroborated. In order to demonstrate that counsel was ineffective, Davis must show that his counsel's performance fell below an objective standard of reasonableness and that but for counsel's errors, there is a reasonable probability that the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-92, 104 S. Ct. 2052, 2064-67, 80 L. Ed. 2d 674 (1984). "Appellate lawyers are clearly not incompetent when they refuse to follow a 'kitchen sink' approach to the issues on appeals. To the contrary, one of the most important parts of appellate advocacy is the selection of the proper claims to urge on appeal." *Howard v. Gramley*, 225 F.3d 784, 791 (7th Cir. 2000) (citing *Schaff v. Snyder*, 190 F.3d 513, 526-27 (7th Cir.1999)). Instead, assistance of counsel is constitutionally ineffective only if counsel fails to raise issues that are "obvious" and "clearly stronger than the ones raised." *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir.1994).

Davis argues that because his confession was uncorroborated, his appellate counsel should have argued that trial counsel was ineffective for failing to challenge his conviction based solely upon that confession. Under Illinois law, it is true that the *corpus delicti* or body of the offense cannot be established by a confession alone. *People v. Bell*, 233 Ill. App. 3d 40, 48, 598 N.E.2d 256, 261 (1992); *People v. Kokoraleis*, 149 Ill. App. 3d 1000, 1026, 501 N.E.2d 207, 224 (1986). But the *corpus delicti* need not be proven exclusively by evidence independent of the confession, "nor

must it be established by evidence other than that which tends to connect the defendant with the crime." *Kokoraleis*, 149 Ill. App. 3d at 1026. Instead, Illinois requires only that some evidence independent of the confession corroborate that the offense charged actually occurred. *Bell*, 233 Ill. App. 3d at 48-49. Here, Davis's confession was corroborated by the facts that: (1) the medical examiner confirmed that the victim died of blunt trauma caused by a beating, from which an inference can be drawn that he was murdered; and (2) that police found the murder weapon, a tire iron (along with a cloth used to wipe it clean), in the dumpster indicated by Davis during his confession. Accordingly, Davis's confession was far from "uncorroborated" and, given the strength of the evidence corroborating it, appellate counsel's decision not to spend time arguing for a meritless (or perhaps frivolous) issue cannot be considered to be unreasonable. Davis's claim that he was denied effective assistance of appellate counsel therefore must fail.

### III. Conclusion

After reviewing the record and the submissions from the parties, the Court finds that Davis has procedurally defaulted some of his claims and failed to identify any error warranting *habeas corpus* relief on the remaining claims. Accordingly, Davis's petition for a writ of *habeas corpus* is DENIED.

IT IS SO ORDERED.

_8/27/03_
Dated

The Honorable William J. Hibbler
United States District Court

10